**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Robert Maxwell, et al.,**

      **Plaintiffs,**

-v-                                  **Case No. 2:08–cv–264**

**The City of Columbus,**           **Judge Michael H. Watson**

      **Defendant.**

## OPINION AND ORDER

This is an employment discrimination action brought by two officers, one currently and one formerly employed by the Columbus Division of Fire, arising in large part out of a series of investigations that were conducted into allegations of wrongdoing within the Columbus Division of Fire's Fire Prevention Bureau. Plaintiffs assert that they were discriminated against based on their association with African-American officers and subjected to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and Ohio Revised Code Chapter 4112. Plaintiffs also assert that they were retaliated against for engaging in speech protected by the First Amendment, and that Defendant violated their right to equal protection as guaranteed by the Fourteenth Amendment to the U.S. Constitution. Lastly, Plaintiffs complain that Defendant portrayed them in a false light in violation of Ohio law. Defendant moves for summary judgment on all of Plaintiffs' claims. Def.'s Mot. Summ. J., ECF No. 30. For the reasons that follow, the Court grants Defendant's summary judgment motion.

## I. FACTUAL BACKGROUND

The instant case is one of four related actions brought against the City of Columbus ("the City" or "Defendant") by current or former members of the Columbus Division of Fire's Fire Prevention Bureau.  The plaintiffs in those related cases asserted similar claims of race (or race association) discrimination and hostile work environment in violation of Title VII, 42 U.S.C. § 1983, and Ohio Revised Code Chapter 4112, as well as state law claims for invasion of privacy/false light.  The lead case of the four, brought by a Battalion Chief formerly assigned to the Fire Prevention Bureau, is *Yolanda Arnold v. City of Columbus*, No. 2:08–cv–31, 2011 WL 1303593 (S.D. Ohio Mar. 31, 2011).[1]  The Court will refer to that case as the "lead case."  Familiarity with the lead case is presumed.  The Court adopts and incorporates by reference the Opinion and Order in the lead case into this Opinion.

The two Plaintiffs in the instant action are Robert Maxwell ("Maxwell") and Virgil Moore ("Moore") (together, "Plaintiffs").  Both Plaintiffs are Caucasian.  Moore has been employed by the Columbus Division of Fire ("CDF") since July 1987, and has been a Fire Prevention Bureau ("FPB") inspector since late 1990.  Moore Aff. ¶¶ 1–2, 5, ECF No. 86.  Maxwell was first employed by the CDF in July 1964, and retired in November 2008.  Maxwell Aff. ¶¶ 1, 61, ECF No. 85.  Maxwell worked in the FPB from 2002 until his retirement.  *Id.* at ¶ 3; Maxwell Dep. 6–8, ECF No. 31.  Plaintiffs assert that they are "closely associated" with the African-American FPB inspectors.  *See* Pls.' Mem. Opp'n Page ID #4696, ECF No. 107; Moore Aff. ¶¶ 6–8, ECF No. 86.

---

[1] The two other related cases are: *Eddie Arnold v. City of Columbus*, No. 2:08–cv–262, 2011 WL 1311892 (S.D. Ohio Mar. 31, 2011), and *Fullen v. City of Columbus*, No. 2:08–cv–263, 2011 WL 1303639 (S.D. Ohio Mar. 31, 2011).

As in the lead case, Plaintiffs' claims in this action arise primarily from three investigations the CDF initiated in 2004 and 2005 into allegations of wrongdoing by FPB inspectors; that is, their claims arise primarily from the PSU investigation, CDP investigation, and Krivda investigation.  The circumstances of those investigations are described in the Factual Background section of the Opinion and Order in the lead case. *Yolanda Arnold*, 2011 WL 1303593, at *1.  Additional facts regarding the presence of a Union representative at and the tape-recording of certain interviews by Krivda are described in the Factual Background section of the Opinion and Order in related case *Eddie Arnold v. City of Columbus*, No. 2:08–cv–263, 2011 WL 1311892, at *2 (S.D. Ohio Mar. 31, 2011).

Plaintiffs filed their initial Complaint on March 19, 2008, and their First Amended Complaint on April 26, 2008.  ECF Nos. 2, 4.  In their First Amended Complaint, Plaintiffs assert claims of race association discrimination and hostile work environment pursuant to Title VII of the Civil Rights Act of 1964 and Ohio Revised Code § 4112.02. First Am. Compl. ¶¶ 45–52, ECF No. 4.  Additionally, Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 for retaliation for engaging in conduct protected by the First Amendment, and for violations of the Fourteenth Amendment's equal protection guarantee.  *Id*. at ¶¶ 55–58.  Lastly, Plaintiffs assert a state law claim for invasion of privacy/false light.  *Id*. at ¶¶ 53–54.

This Court has jurisdiction over Plaintiffs' Title VII and § 1983 claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## II.  SUMMARY JUDGMENT

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Upon filing a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the nonmoving party's claim. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).  Under Rule 56(c), the party asserting that a fact cannot be or is genuinely disputed must support the assertion by either "citing to particular parts of materials in the record," or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  In responding to a summary judgment motion, the non-moving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Id.*; *see also Steward v. New Chrysler*, No. 08-1282, 2011 WL 338457, at *7 (6th Cir. Feb. 4, 2011) ("At this stage in the litigation, a plaintiff may no longer rely solely on her pleadings, but must come forward with 'probative evidence tending to support the complaint.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

(1986)). "Essentially, a motion for summary judgment is a means by which to "challenge the opposing party to 'put up or shut up' on a critical issue." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989)). The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Matsushita*, 475 U.S. at 588 (1986); *Petty v. Metro. Gov't. of Nashville-Davidson Cnty.*, 538 F.3d 431, 438–39 (6th Cir. 2008).

When reviewing a summary judgment motion, the Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). It is not the obligation of the court to comb the record to find evidence or testimony establishing a party's case. *See Nerswick v. CSX Transp., Inc.*, 692 F. Supp. 2d 866, 882 (S.D. Ohio 2010) (citing *Street*, 886 F.2d at 1479–80); *see also Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000); *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir. 2006). The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Reeves*, 530 U.S. at 150–51. Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson*, 477 U.S. at 248; *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Thus, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

## III. DISCUSSION

As a preliminary matter, the Court notes that, like the plaintiffs in the lead and related cases, Plaintiffs do not appear to appreciate the extent of their burden in responding to Defendant's motion for summary judgment. Plaintiffs seemingly filed to the docket nearly every piece of discovery obtained in these four related cases, including nearly three dozen depositions and nearly two hundred exhibits. Plaintiffs, however, failed to cull this discovery and provide few cites to specific items of evidence in support of their allegations and claims. The Court reiterates that it has no duty "to comb the record to find evidence or testimony establishing a party's case." *Nerswick*, 692 F. Supp. 2d at 882. Rather, Plaintiffs, as the non-moving parties, have an affirmative duty to direct the Court's attention to those specific portions of the record upon which they seek to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### A.    Race Association Discrimination

Plaintiffs assert they were the victims of employment discrimination because of their association with their African-American colleagues, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Ohio Revised Code § 4112.02. Title VII prohibits employers from "discriminat[ing] against any individual with respect to his

compensation, terms conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1).  Similarly, Ohio Revised Code Chapter 4112 prohibits employers from discriminating against any person with respect to the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," on the basis of that person's race.  Ohio Rev. Code § 4112.02(A).

Here, Plaintiffs are not members of a protected class but claim they were discriminated against on the basis of their association with or advocacy for their African-American co-workers.  Title VII not only protects individuals who are members of a protected class, but also "forbids discrimination on the basis of association with or advocacy for a protected party."  *Barrett*, 556 F.3d at 511; *see also Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick & GMC Trucks, Inc.*, 173 F.3d 988, 994–95 (6th Cir. 1999).  Ohio Revised Code § 4112.02 likewise includes a proscription against discrimination based on association.  *See Cole v. Seafare Enterprises*, No. C-950157, 1996 WL 60970, at *1 (Ohio App. 1 Dist. Feb. 14, 1996); *see also Booker v. Dee Sign Co.*, No. 1:06cv667, 2008 WL 839786, at **2, 7 (S.D. Ohio Mar. 26, 2008) (analyzing plaintiff's claim of race association discrimination brought under Ohio Rev. Code § 4112.02(A)).  A claim for discrimination under Ohio Revised Code § 4112.02(A) is evaluated using the same analytical framework as a Title VII claim.  *See Allen v. Ohio Dep't of Job & Family Servs.*, 697 F. Supp. 2d 854, 880 (S.D. Ohio 2010).

A plaintiff may prove that he was subject to disparate treatment based on race in violation of Title VII using either direct or circumstantial evidence.  *See, e.g., Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009).  Because Plaintiffs do not offer

direct evidence of discrimination, the Court analyzes their claim according to the

burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 802–05 (1973) and *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248,

256–59. *See, e.g., Upshaw*, 576 F.3d at 584. Under that framework, a plaintiff bears

the initial burden of establishing a prima facie case of racial discrimination. *See*

*Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001). Although "[t]here are

many 'context dependent ways by which plaintiffs may establish a prima facie case,'"

"the key question is always whether, under the particular facts and context of the case

at hand, the plaintiff has presented sufficient evidence that he or she suffered an

adverse employment action under circumstances which give rise to an inference of

unlawful discrimination." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir.

2007) (quoting *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir.

2007)).

    To establish a prima facie case of discrimination, a plaintiff must demonstrate

that: (1) he is a member of a protected class; (2) he suffered an adverse employment

action; (3) he was qualified for the position; and (4) a similarly situated person outside

the protected class was treated more favorably than he was. *See Braithwaite*, 258 F.3d

at 493. A plaintiff who is not in a protected class may satisfy the first element of this

test based on his association with or advocacy for protected employees. *See Barrett*,

556 F.3d at 515. If the plaintiff demonstrates a prima facie case, the burden shifts to

the defendant to articulate a legitimate nondiscriminatory reason for its decision. *See*

*Braithwaite*, 258 F.3d at 493. Once the defendant articulates a legitimate

nondiscriminatory reason for its action, the burden shifts back to the plaintiff to establish

that the defendant's proffered reason was a pretext for discrimination. *Id*. "To show pretext, a plaintiff must be able to demonstrate both that the 'reason was false, and that discrimination was the real reason.'" *Pittman v. Cuyahoga Valley Career Ctr.*, 451 F. Supp. 2d 905, 917 (N.D. Ohio 2006) (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). "[A]lthough the *McDonnell Douglas* presumption shifts the burden of production to the defendant, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *St. Mary's Honor Ctr.*, 509 U.S. at 518 (quoting *Burdine*, 450 U.S. at 253).

Here, Defendant argues that Plaintiffs cannot establish a prima facie case of race discrimination under Title VII because they cannot establish that they suffered an adverse employment action or that they were treated differently than similarly-situated co-workers. Defendant also argues that Plaintiffs cannot show that the legitimate, non-discriminatory reasons it offers for its actions were pretextual.

Defendant first argues that Plaintiffs cannot establish a prima facie case of race discrimination based on the PSU, CDP, and Krivda investigations. Defendant argues that the investigations themselves were not adverse actions, and further argues that neither the fact that Union representative James Davis was present during Krivda's interviews, nor that Krivda's interviews with Plaintiffs were tape-recorded, constitutes an adverse action. Defendant also argues that Plaintiffs were not treated differently than any other members of the FPB with respect to the investigations, and that, even if Plaintiffs could establish a prima facie case, the investigations were conducted for a legitimate, non-discriminatory reason. Additionally, Defendant argues that Plaintiffs'

claims of discrimination based on the PSU and CDP investigations, the presence of Davis at their interviews, and the fact that the interviews were tape-recorded are time-barred.

Second, Defendant argues that Plaintiffs cannot establish a prima facie case of race discrimination based on a requirement that they complete daily activity sheets or a prohibition against parking their assigned City vehicles remotely, at fire stations closer to their homes, at the end of the workday. Defendant argues that neither of these actions is materially adverse, and Plaintiffs cannot establish that they were treated less favorably than similarly-situated co-workers. Additionally, Defendant argues that it had a legitimate, non-discriminatory business reason for instituting the requirement to complete activity sheets. Lastly, Defendant argues that Plaintiffs' Title VII claim with respect to those two actions is also time-barred.

Third, Defendant argues that Plaintiffs cannot establish a prima facie case of discrimination based upon an alleged order by Ellis prohibiting those Plaintiffs who had filed EEOC charges from congregating with one another during work hours. Defendant argues that directive was not an adverse employment action, and Plaintiffs were not treated differently than similarly-situated individuals.

In response, Plaintiffs assert that they "state a clear prima facie case" of race discrimination based on their association with the African-American FPB inspectors, that they "were treated less favorably than similarly situated whites," and that they "set forth sufficient evidence of pretext." Pls.' Mem. Opp'n Page ID #4700–01.

The Court will first address Defendant's argument that certain of Plaintiffs' Title VII race discrimination claims are time-barred, and will then address the substance of

those claims.

### 1. Plaintiffs' Title VII race discrimination claim based on the PSU and CDP investigations are time-barred.

As a preliminary matter, the Court agrees with Defendant that to the extent Plaintiffs attempt to argue that the PSU and CDP investigations in themselves are adverse actions, their race discrimination claim based on those investigations is time-barred. In order to bring a Title VII lawsuit, a plaintiff must first file a timely discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). *See Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001). In Ohio, a "deferral state," a plaintiff must file an EEOC Charge within 300 days of the alleged discriminatory act. See *id*. at 498 (quoting *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999)).

Defendant argues that Plaintiffs failed to exhaust their administrative remedies with respect to the PSU and CDP investigations because Plaintiffs did not file their EEOC charges regarding those investigations within 300 days of when the investigations concluded. As discussed in the lead case and in related case *Eddie Arnold*, 2011 WL 1311892, the PSU investigation was completed in February 2005, with its findings issued in May 2005, and the CDP investigation was completed in March 2005. Moore and Maxwell filed EEOC charges in January 2007 alleging race discrimination and hostile work environment based on, *inter alia*, being subjected to investigations by the City, "none of which found any irregularities in our work or performance," and the harm to their reputations caused by media coverage of the investigation. *See* Gordon Aff. ¶¶ 1–7 and exhibits thereto, ECF No. 30–2.

Plaintiffs do not in any way address or respond to Defendant's argument that to the extent they base their Title VII race discrimination claim on the CDP and PSU investigations, such claim is time-barred.  Rather, like plaintiff Yolanda Arnold in the lead case, Plaintiffs simply argue that because Ohio Revised Code § 4112.02 does not require an EEOC or OCRC charge to perfect a claim and because a six-year statute of limitations applies to claims brought under that Section, their discrimination and retaliation claims are timely under Ohio law.  Pls.' Mem. Opp'n Page ID #4714. Therefore, Plaintiffs have waived the argument that their Title VII race discrimination claims based on the PSU and CDP investigations are properly before the Court.

The Court, however, will consider the PSU and CDP investigations in evaluating Plaintiffs' hostile work environment claim.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("Provided that an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability."). Additionally, Plaintiffs are correct that their discrimination claims based on the PSU and CDP investigations are timely under Ohio law for purposes of their claims under Ohio Rev. Code § 4112.02.  *See Harrison v. City of Akron*, 43 F. App'x 903, 905 (6th Cir. 2002) (a plaintiff need not exhaust administrative remedies prior to filing suit for race discrimination under Ohio Revised Code § 4112.02); *Cosgrove v. Williamsburg of Cincinnati Mgt. Co.*, 70 Ohio St. 3d 281, 282 (1994) (the statute of limitations for bringing a claim under § 4112.02 is six years).  For the purposes of their § 4112.02 claim, the Court will discuss Plaintiffs' substantive claim that the PSU and CDP

investigations constituted an adverse action in Section A(2)(a), below.[2]

The Court now turns to the substance of Plaintiffs' race association discrimination claim; that is, whether the parties have carried their respective burdens under the *McDonnell Douglas* framework.

### 2. The prima facie case

As an initial matter, the Court notes that Plaintiffs have established the first prong of the prima facie case of race discrimination based on association. In the Sixth Circuit, a non-protected employee is not required to demonstrate any certain degree of association with members of a protected class in order to assert a viable claim of discrimination under Title VII. Rather, if the plaintiff "shows that 1) [he] was discriminated against at work 2) because [he] associated with members of a protected class, then the degree of association is irrelevant." *Barrett*, 556 F.3d at 513 (citing *Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 884 (7th Cir. 1998)). Plaintiffs have presented evidence that they were closely associated with their African-American colleagues in the FPB. The Court thus considers Plaintiffs to have established the first prong of the prima facie case.

### a. The PSU, CDP and Krivda investigations

Although Plaintiffs assert, in a heading of their memorandum in opposition, that

---

[2]As the Court will discuss in Section A(2)(a) below, however, Plaintiffs fail to establish a claim of race discrimination based on those allegations. Additionally, the Court notes that Defendant also argues that Plaintiffs' Title VII claims are time-barred with respect to: the presence of Union representative James Davis at their interviews with Krivda; the fact that those interviews were tape-recorded; the requirement that they complete daily activity sheets; and the prohibition against remote parking. As discussed in Section A(2)(b), however, even assuming, for the sake of argument, that those claims were properly before the Court, Plaintiffs have waived them by failing to develop any argument in support. *See United States v. Sandridge*, 385 F.3d 1032, 1035–36 (6th Cir. 2004) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

they "state a clear prima facie case" of race discrimination based on their association with their African-American colleagues, they fail to set forth a cogent argument that they have satisfied the remaining elements of the prima facie case. In that section of their memorandum, for instance, Plaintiffs do not identify any specific employment actions to which they were allegedly subjected that qualify as materially adverse, nor do they identify any similarly-situated individuals who they allege were treated more favorably.

Rather, in that section, the closest Plaintiffs come to identifying a specific allegedly adverse action is to argue, echoing the allegations of the plaintiffs in the related cases, that they were "singled out for public and false allegations of 'criminal' wrongdoing." Pls.' Mem. Opp'n Page ID #4701. As it did in the lead and related cases, the Court will surmise that with that vague statement, Plaintiffs attempt to argue that the PSU, CDP, and Krivda investigations and corresponding media coverage constituted adverse employment actions.

In support of that claim, however, Plaintiffs present no additional argument or authority beyond what was raised in the lead and related cases. Specifically, Plaintiffs present no authority that the degree of scrutiny of the PSU, CDP and Krivda investigations rose to the level of an adverse action. Plaintiffs do not present evidence that the negative media coverage or the content of the articles in *The Columbus Dispatch* effected a "materially adverse change in the terms or conditions of [their] employment." *Michael*, 496 F.3d at 593. Additionally, Plaintiffs do not offer legal authority indicating that Defendant may be held responsible for any processes or procedures of the investigation conducted by Krivda, an independent third party. Further, Plaintiffs present no argument or evidence related to the bald assertion,

advanced by plaintiff Yolanda Arnold in the lead case, that someone in the CDF was leaking false information about them to the *Dispatch*, and encouraging the allegedly harassing stories. Nor do Plaintiffs present authority to establish that articles in the *Dispatch*, written by a member of the *Dispatch* staff, may form the basis of a Title VII race discrimination claim. Plaintiffs, lastly, present no evidence to indicate that the investigations were a pretext for discrimination. Therefore, to the extent Plaintiffs attempt to base their race discrimination claim on the PSU, CDP and Krivda investigations, they present no new argument or evidence that those investigations constituted adverse actions, beyond that presented by Yolanda Arnold in the lead case. Defendant is therefore entitled to summary judgment on Plaintiffs' race discrimination claim based on those investigations.

### b. Miscellaneous actions subject to waiver

As noted, in the section of their memorandum in opposition arguing that they "state a clear prima facie case," Plaintiffs express what the Court interprets to be an allegation that the PSU, CDP and Krivda investigations constituted adverse actions. Looking at their memorandum in opposition as a whole, the Court notes that although Plaintiffs mention additional miscellaneous actions at various other points of their memorandum, they do not present a cogent argument that these actions are materially adverse, so as to form the basis of an actionable race discrimination claim. Specifically, Plaintiffs do not develop a claim of race discrimination with respect to the following alleged actions: (1) Paxton's alleged "ill-fated and illegal reorganization plan"; (2) Paxton's prohibition against remote parking; (3) Union representative James Davis attending Plaintiffs' interviews with Krivda, despite their objections; (4) Krivda allegedly

failing to tape-record her interviews with "the persons who had the most damning comments against 'the blacks'"; (5) that Krivda was allegedly "combative" and "intimidating" in "interrogat[ing]" Plaintiffs, in contrast to her approach with other Caucasian inspectors, and that she allegedly "dismissed Plaintiffs . . . as 'conspiracy theorists'"; (6) that Plaintiffs, along with the other inspectors, were allegedly "under surveillance"; (6) that Ellis allegedly denied Plaintiff Maxwell's request to transfer to another inspection area within the FPB during the Krivda investigation; (7) that Plaintiff Moore was allegedly investigated and disciplined for "backtiming"; (8) the alleged order from Ellis against congregating or associating at work; and (9) an alleged fourth investigation of Plaintiff Moore. Pls.' Mem. Opp'n Page ID #4697, 4702–07. Additionally, Plaintiffs do not develop a claim of race association discrimination with respect to the following allegations asserted in their First Amended Complaint: (1) that certain officers failed to show up for work but still received compensation and were not disciplined, and that CDF was destroying documents related to these officers' failure to show; and (2) that they were "required to perform duties" and "subjected to work rules that no other staff department has been required, such as completing daily activity sheets." First Am. Compl. ¶¶ 28–31, 33, ECF No. 4.

Plaintiffs present no argument or authority that these alleged actions qualify as materially adverse for purposes of a Title VII race discrimination claim. Plaintiffs also do not cogently argue or present evidence that they were treated differently than similarly-situated officers with respect to these actions. Plaintiffs identify one Caucasian inspector, Andy Royer, who they allege was treated differently, in that he "did not come under fire like [Plainitffs] did during the Krivda investigation" and allegedly

engaged in backtiming, but was never disciplined or investigated.  Pls.' Mem. Opp'n

Page ID # 4702, 4706.  They do not, however, present evidence demonstrating that

Royer was similarly-situated.  Moreover, the memoranda in opposition in the related

cases, which Plaintiffs incorporate into their memorandum, do not set forth cogent

arguments or authority with respect to the above mentioned alleged actions.  *See Eddie*

*Arnold*, 2011 WL 1311892, at *10–13.  To the extent Plaintiffs initially sought to assert a

claim of race discrimination based on the above allegations, they have therefore waived

any such claims by failing to support or develop that argument.  *See Sandridge*, 385

F.3d at 1035–36.

**B.    Hostile Work Environment**

Plaintiffs allege that they were subject to a hostile work environment based on

their association with African-American colleagues in violation of Title VII and Ohio

Revised Code § 4112.02.

To establish a prima facie case of racially hostile work environment, Plaintiffs

must establish that:  (1) they are members of a protected class; (2) they were subjected

to unwelcome racial harassment; (3) the harassment was based on race; (4) the

harassment unreasonably interfered with their work performance by creating an

intimidating, hostile, or offensive work environment; and (5) the employer is liable.  *See*

*Barrett*, 556 F.3d at 515.  A plaintiff not within a protected class may satisfy the first

element of this test based on his association with or advocacy for protected employees.

*Id*.  As noted, the degree of association with the protected employees is irrelevant.  *Id*.

at 513.  Thus, by presenting evidence that they were "closely associated" with the

African-American inspectors, Plaintiffs satisfy the first element.  Because Plaintiffs do

not establish the remaining elements of the prima facie case, however, their claim of racially hostile work environment must fail.

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*. at 514 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The Court must examine the totality of the circumstances to determine whether the work environment was hostile. *Id*. at 515.

In examining the totality of the circumstances, the Court considers factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id*. at 515. Where, as here, Plaintiffs base their claim on their association with African-American co-workers, the Court does not consider all alleged "incidents of harassment of African-Americans as contributing to a hostile work environment." *Barrett*, 556 F.3d at 515. "[R]ather, only harassment that was directed toward Plaintiffs themselves or toward others who associated with or advocated on behalf of African-American employees is relevant to [the] analysis, and only to the extent that Plaintiffs were aware of it." *Id*. "In other words, only harassment that specifically targeted those who associated with and advocated for African-Americans will result in an actionable hostile work environment claim for [Plainitffs]." *Id*. at 516.

To establish an adverse effect on work performance, a plaintiff need not prove that his tangible productivity declined due to the harassment, but need only show that

the harassment made it more difficult to do her job. *See Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir.1988). Both an objective and a subjective test must be applied: the conduct must have been severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as having been abusive. *Barrett*, 556 F.3d at 514. Title VII is not a "general civility code," and thus "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation omitted). Rather, "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* at 788.

Claims for hostile work environment brought under Ohio Revised Code § 4112.02 are evaluated using the same evidentiary standards and analysis used for federal claims under Title VII. *See Satterfield v. Karnes*, 736 F. Supp. 2d 1138, 1157 (S.D. Ohio 2010).

As an initial matter, the Court notes that the section of Plaintiffs' memorandum in opposition headed: "Samples of evidence in the record of the hostile environment endured by all of the Plaintiffs in the interrelated cases" simply refers the Court to the memoranda of the plaintiffs in the related cases, which, Plaintiffs argue, "set forth a general sense of the scenario and the environment in which all of these related events took place." Pls.' Mem. Opp'n Page ID #4708.

The plaintiffs in the lead and related cases attempted to base a claim of hostile work environment on the articles that appeared in the *Dispatch*. To the extent Plaintiffs

here attempt the same by referring to the memoranda of the related cases, they do not

present any additional evidence or authority to support such a claim beyond that

presented in the lead case.  Therefore, for the reasons discussed in the Opinion and

Order in the lead case, Plaintiffs fail to establish a claim of racially hostile work

environment based on the articles that appeared in the *Dispatch*.  *Arnold*, 2011 WL

1303593, at *20–21.

In that section, to support their hostile work environment claim, Plaintiffs also

refer the Court to the allegations set forth elsewhere in their memorandum. Pls.' Mem.

Opp'n Page ID # 4708–09.  Accordingly, the Court will consider whether Plaintiffs can

establish a claim of hostile work environment based on the allegations contained in

their memorandum as a whole.  To reiterate, in the course of their memorandum in

opposition, Plaintiffs allege they were subjected to the following: (1) the PSU, CDP, and

Krivda investigations; (2) Paxton's alleged "ill-fated and illegal reorganization plan"; (3)

Paxton's prohibition against remote parking; (4) Union representative James Davis

attending Plaintiffs' interviews with Krivda, despite their objections; (5) Krivda allegedly

failing to tape-record her interviews with "the persons who had the most damning

comments against 'the blacks'"; (6) Krivda's alleged "combative" and "intimidating"

"method of [interrogating]" Plaintiffs, as compared to other Caucasian inspectors, and

her alleged dismissal of Plaintiffs as "conspiracy theorists"; (7) along with the other

inspectors, being "under surveillance"; (8) that Ellis allegedly denied Plaintiff Maxwell's

request to transfer to another inspection area within the FPB during the Krivda

investigation; (9) that Plaintiff Moore was alleged investigated and disciplined for

"backtiming"; (10)  the alleged order from Ellis against congregating or associating at

work; and (11) an alleged fourth investigation of Plaintiff Moore. Pls.' Mem. Opp'n Page ID #4697, 4702–07.

Plaintiffs do not, however, at any point in their memorandum in opposition, offer a cogent argument or evidence that those alleged incidents of harassment were based on or motivated by their association with or purported advocacy for their African-American colleagues. Plaintiffs do not, for instance, allege hearing any remarks directed towards them specifically that would suggest they were discriminated against on the basis of association or advocacy. *See Barrett*, 556 F.3d at 518. In addition, Plaintiffs also provide no evidence or cogent argument that the allegedly harassing conduct was sufficiently severe or pervasive to alter the conditions of their employment. In sum, Plaintiffs' argument that they were subjected to a hostile work environment based on their association with African-American colleagues consists only of conclusory, insufficiently supported allegations, which alone are insufficient to establish a prima facie case. *See Sandridge*, 385 F.3d at 1035–36; *see also Barrett*, 556 F.3d at 518. Defendants are thus entitled to summary judgment on Plaintiffs' hostile work environment claim.[3]

## C. Retaliation for Engaging in Speech Protected by the First Amendment, in Violation of 42 U.S.C. § 1983

Plaintiffs bring a claim under 42 U.S.C. § 1983 alleging that Defendant retaliated

---

[3]Plaintiffs do not distinguish between racially hostile work environment and retaliatory hostile work environment, two distinct types of harassment, in their memorandum in opposition. The Court notes, however, that unlike the plaintiffs in the related cases, Plaintiffs here do not assert a retaliation claim. Additionally, Plaintiffs do not present a cogent argument in their memorandum in opposition that the allegedly harassing actions constituted retaliation for either internal complaints of discrimination or the filing of their EEOC charges. Because Plaintiffs do not develop or present any argument or legal authority in support of a potential claim of retaliatory hostile work environment, they therefore have waived any such claim. *See Sandridge*, 385 F.3d at 1035–36.

against them for engaging in speech protected by the First Amendment to the U.S. Constitution.

As in the lead case, Defendant asserts three arguments in moving for summary judgment on Plaintiffs' § 1983 claim. First, Defendant argues that any claims arising from events that occurred prior to March 2006 are barred by the two-year statute of limitations. Second, Defendant argues that Plaintiffs fail to allege or prove essential elements of their First Amendment retaliation claim. Finally, Defendant argues that pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), the City of Columbus, as the sole Defendant, cannot properly be held liable under § 1983 for the conduct of its employees or agents.

In response, Plaintiffs present an argument nearly identical to that of plaintiff Yolanda Arnold in the lead case. Plaintiffs argue that their claim is not barred by the statute of limitations, that they establish the required elements, and that Defendant can properly be held liable.

The parties' arguments closely mirror those of the lead case, and no new arguments or evidence regarding Plaintiffs' § 1983 claim that the Court has not already addressed in the lead case are advanced. Thus, for all of the reasons enumerated in Section III(D) of the Opinion and Order in the lead case, Plaintiffs here also fail to establish a viable claim against the City of Columbus for retaliation in violation of their First Amendment rights, pursuant to 42 U.S.C. § 1983.

**D.    Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection, in Violation of 42 U.S.C. § 1983**

Plaintiffs' First Amended Complaint also purports to assert a claim under 42

U.S.C. § 1983 for the violation of their right to equal protection as guaranteed by the Fourteenth Amendment to the U.S. Constitution. First Am. Compl. ¶¶ 57–58, ECF No. 4. Plaintiffs present no argument in support of that claim in their response to Defendant's motion for summary judgment; they have therefore waived any purported claim based on alleged violations of the Fourteen Amendment. *See Sandridge*, 385 F.3d at 1035–36. Moreover, even if Plaintiffs had not waived that claim, it would also fail for the same reasons as stated in Section III(C), above, and Section III(D) of the Opinion and Order in the lead case.

## IV. REMAINING STATE LAW CLAIM

Having determined that Plaintiffs' federal claims are subject to dismissal, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claim for Invasion of Privacy—False Light (Count V). 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The Court will therefore dismiss that state law claim without prejudice.

## V. DISPOSITION

For the aforementioned reasons, the Court **GRANTS** Defendant's summary

judgment motion. ECF No. 30. The Court **DISMISSES** the following claims **WITH**

**PREJUDICE**: Race Association Discrimination in violation of Title VII and Ohio Rev.

Code §§ 4112.02 & 4112.99 (Counts I & II); Hostile Work Environment in violation of

Title VII and Ohio Rev. Code § 4112.02 & 4112.99 (Counts III & IV); First Amendment

Retaliation and violations of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983

(Counts VI & VII). The Court dismisses Plaintiffs' state law claim for Invasion of

Privacy—False Light (Count V) **WITHOUT PREJUDICE**.


**IT IS SO ORDERED.**


**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**